IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Chicago Police Officers SHANNON SPALDING and DANIEL ECHEVERRIA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Mo. 12-cv-8777 |
| CITY OF CHICAGO, Chicago Police Chief JUAN RIVERA, Chicago Police Chief DEBRA KIRBY, Chicago Police Commander JAMES O'GRADY, Chicago Police Chief NICHOLAS ROTI, Chicago Police Lt. DEBORAH PASCUA, Chicago Police Sergeant MAURICE BARNES, Chicago Police Lt. ROBERT CESARIO, Chicago Police Commander JOSEPH SALEMME, Chicago Police Sergeant THOMAS MILLS, Chicago Police Sergeant MICHAEL BARZ and Chicago Police Sergeant ROBERT MUSCOLINO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Gary Feinerman  Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR LEAVE TO FILE THEIR SECOND AMENDED COMPLAINT**

**The Second Amended Complaint Asserts New Claims Only as to the New Defendants**

The allegations which form the basis for Plaintiffs' claims of individual liability under the Illinois Whistleblower Act (IWA) were made in their initial Complaint filed November 1, 2012 (Count V, ¶ 102) and in their First Amended Complaint ("FAC") filed May 29, 2013 (Count III, ¶ 124). Each of those paragraphs alleged that "The City of Chicago and its employees and agents were prohibited according to 740 ILCS § 174/15 from retaliating against Plaintiffs…" The complaint and FAC sought judgment against all defendants, jointly and severally for compensatory damages and against the individuals for punitive damages. Count III

1

of the proposed Second Amended Complaint is therefore not a new claim. It merely clarifies the claim by expanding the definition of employer to specifically include the individuals in accordance with the plain language and legislative history of the IWA.

**The IWA Supports Individual Liability**

The defendants disagree with Judge Kennelly's reasoning in *Bello v. Village of Skokie*, 2014 WL 4344391 (N.D. Ill. Sept. 2, 2014) and argue that there is no individual liability under the IWA. Judge Guzman in *Thompson v. Board of Education of the City of Chicago*, No. 11 C 1712, 2014 WL 1322958, at *7 (N.D. Ill. Apr. 2, 2014) has also held that the plain language of the IWA creates a cause of action against an individual supervisor as has Judge Lefko. See also, *Harris v. State of Illinois et al*, 753 F.Supp.2d 734,742 (N.D. IL 2010) ("Harris contends that even if she cannot proceed against IDOC, she may proceed with her Whistleblower Act claim against the individual defendants. Defendants argue that the Whistleblower Act does not allow for suit against individual employees, but this ignores the recent amendment, which includes within the definition of an employer "any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees.")

Defendants instead ask this court to follow two District Court cases that perfunctorily dismiss individual claims under the IWA with no stated reasoning; *Cunliffe v. Wright*, 2014 WL 2808969, *12 (N.D. Ill. June 20, 2014) (litigated by the Plaintiff *pro se* ) and *Mantorana v. Village of Elmwood Park*, 2013 WL 1686869 , *4 (N.D. Ill. April 18, 2013). Defendants also cite to *Hernandez v. Cook County Sheriff's Office*, 2014 WL 1339686, *3 (N.D. Ill. April 3, 2014) where Judge Zagel states that "The Act clearly allows for the possibility that an individual

may be an employer" while concluding that individual liability does not necessarily follow. Neither of these three cases looked at the wording of the IWA or its legislative history.

In *Parker v. Illinois Human Rights Commission,* 2013 WL 5799125 (N.D. Ill Oct. 25, 2013) *9, Judge Gottschall does look to the language of the IWA as amended in 2008. She notes that the amendment added the word "any person" to the definition of employer. Judge Gottschall erroneously believed that the IWA was patterned on federal discrimination statutes such as the ADA and Title VII and therefore suggests that the Illinois legislature did not intend to impose individual liability on an employer's agents, but merely was incorporating the common law doctrine of *respondeat superior* into the Act. Ultimately, the Court in *Parker* held that even assuming that the IWA can be read to allow claims against individuals acting within the scope of their employment, the plaintiff had not adequately stated a claim against the individual defendant.

Judge Kennelly's decision in *Bello v. Village of Skokie*, 2014 WL 4344391 (N.D. Ill. Sept. 2, 2014) is the better reasoned opinion and, like Judge Guzman's decision in *Thompson,* focuses on the plain wording of the statute.

An examination of the evolution of the Illinois Whistleblower Act makes it clear that liability under the Act extends to the individuals who retaliated against a plaintiff as well as to the employing entity. The IWA, when initially enacted in 2003, defined "Employer" as follows:

> "Employer" means: an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, except that "employer" does not include any governmental entity.

2003 Ill. Legis. Serv. P.A. 93-544 (S.B. 1872) (WEST)

When the Act was amended, in 2007, the definition of who could be liable under the Act as an "employer" was greatly expanded:

3

> § 5. Definitions. As used in this Act:
>
> "Employer" means: an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, including a political subdivision of the State; a unit of local government; a school district, combination of school districts, or governing body of a joint agreement of any type formed by two or more school districts; a community college district, State college or university, or any State agency whose major function is providing educational services; any authority including a department, division, bureau, board, commission, or other agency of these entities; **and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees**. (emphasis added)

740 Ill. Comp. Stat. Ann. 174/5

P.A. 93-544, § 5, eff. Jan. 1, 2004. Amended by P.A. 95-128, § 5, eff. Jan. 1, 2008; P.A. 96-1253, § 5, eff. Jan. 1, 2011.

The synopsis of the legislative history of the amendments, embodied in IL H.R. B. Stat. 2007-2008 Reg. Sess. H.B. 742, explains the changes as follows:

> **House Amendment No. 3**
> Further amends the Whistleblower Act. Provides that an employer includes a political subdivision of the State; a unit of local government; a school district, combination of districts, or joint agreement formed by districts; a community college district, State college or university, or State agency primarily providing educational services; an authority, department, division, or other agency of these entities; and a person acting on behalf of an employer in dealing with its employees. Deletes the exception for governmental entities.

Illinois House Bill Status, 2007-2008 Reg. Sess. H.B. 742

The last independent clause in the expanded definition, *"and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees"* is unambiguous. The Court in *Bello* stated:

> In interpreting the IWA, an Illinois statute, a court looks to the "plain language" of the statute and refrains from reading into that language "exceptions, limitations, or

4

> conditions the legislature did not express." *Madigan v. Kinzer,* 232 Ill.2d 179, 185, 902 N.E.2d 667, 671 (2009). The language of the statute "is the surest and most reliable indicator of legislative intent." *People v. Marshall,* 242 Ill.2d 285, 292, 950 N.E.2d 668, 673 (2011) (internal quotation marks omitted).
>
> In the Court's view, the IWA is clear on its face. The definition of employer specifically includes an "individual." More importantly, the statute includes in the definition of employer "any person acting ... on behalf of [an entity] in dealing with its employees." In this way, the statute makes it clear that individuals acting on behalf of an entity that one might colloquially understand to be a person's "employer" may likewise be considered "employers" potentially liable for violating the statute. Defendants' argument asks the Court to read into the statute a limitation that its plain language does not include. The Court concludes that the individual defendants are not entitled to dismissal of count 5.

*Bello v. Village of Skokie*, 2014 WL 4344391 at *9 (N.D. Ill. Sept. 2, 2014)

There is nothing in the IWA or its legislative history that suggests that it was patterned after Title VII of the Civil Rights Act or the Americans with Disabilities Act. While Judge Gottschall in *Parker* observes that the Illinois legislature had amended the IWA to define "employer" to include "any person," she did not discuss that significance. In *Russo v. Broncor, Inc.*, No. 13-CV-348-JPG-DGW, 2013 WL 7158040, at *5 (S.D. Ill. July 24, 2013), the Court, in rejecting a claim for individual capacity liability under the federal False Claims Act, stated:

> Further, because Congress was aware that courts had rejected individual liability, it could have replaced "employer" with "any person" as it had done in other anti-retaliation statutes to compel individual liability. *Id.* at *25 (citing 29 U.S.C. § 215(a)(3) (stating "it shall be unlawful for any person" to retaliate against employees engaging in protected activity under the Fair Labor Standards Act)); 29 U.S.C. § 2615(b) (stating that "[i]t shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual" has exercised rights under the Family and Medical Leave Act)).

Here, the Illinois legislature, rather than replacing the word "employer" with "any person," chose to define the word employer to include any person acting within the scope of his

5

or her authority. To hold that this merely codifies the doctrine of *respondeat superior* would render this amendment to the statute meaningless.[1]

The facts of the instant case involve retaliation claims of ongoing, insidious harassment by supervisory employees. These are not the kinds of tortious acts that can only be committed by an entity. The Supreme Court has recognized that similar claims of retaliation that are actionable under 42 U.S.C. § 1981, create individual liability on the part of the individual harasser. *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 445, 128 S. Ct. 1951, 170 L.Ed.2d 864 (2008) Illinois courts have equally recognized this doctrine. *Blount v. Stroud*, 395 Ill. App. 3d 8, 19-20, 915 N.E.2d 925, 937 (2009)[2]

Judge Kennelly got it right. There is no reason why the plaintiffs should not be allowed to file their Second Amended Complaint which makes it clear that they are asserting the defendants are liable in their individual capacities, for violating the Illinois Whistleblowers Act.

---

[1] Even if the law of *respondeat superior* is applicable, which it is, that does not relieve the agent from individual liability under traditional agency law. An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal * * *." Restatement (Second) of Agency § 343, at 105 (1958); accord W. Seavey, Agency § 129, at 220 (1964).

[2] While the Illinois Supreme court has held in *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 22, 694 N.E.2d 565, 570 (1998) that the common law tort of retaliatory discharge can only be asserted against the employer, it reasoned that "the power to hire and fire employees is ultimately possessed only by the employer. Consequently, the tort of retaliatory discharge may be committed only by the employer. The agent or employee who carries out the employer's decision to fire will not be subject to personal liability for retaliatory discharge." In Illinois, the common law tort does not apply to retaliatory conduct short of discharge. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 41, 645 N.E.2d 877, 883 (1994); *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 742, 742 N.E.2d 858, 864 (2000)("The tort of retaliatory discharge does not encompass any behavior other than actual termination of employment")

**Plaintiffs Have Alleged a Continuing Violation of the IWA**

In *Taylor v. Bd. Of Educ. Of City of Chicago,* 2014 IL App (1st) 123744 ¶¶ 46-49, *reh'g denied* (June 5, 2014) *appeal denied,*, No. 117949, 2014 WL 4798571 (Ill. Sept. 24, 2014) and *appeal denied*, No. 117937, 2014 WL 4799474 (Ill. Sept. 24, 2014), the Court held the continuing tort or continuing violation theory applicable to claims under the IWA. Under this rule, the plaintiffs' cause of action does not accrue until the date the final injury occurs or the tortious acts cease. *Taylor* at *¶ 46.*

The plaintiffs' proposed Second Amended Complaint alleges that the City of Chicago and the individual Defendants continuously and repeatedly retaliated against Plaintiffs…as a result of their reporting of criminal misconduct." SAC ¶ 132. The specific allegations of the initial complaint, the First Amended Complaint and the proposed Second Amended Complaint each detail a continuing campaign of retaliation and harassment, orchestrated at the highest levels of the Chicago Police Department. Paragraph ¶33 of the SAC alleges that "In August 2010, Defendant O'Grady began a campaign of harassment and retaliation that persists to this day."

The SAC, like its predecessors, alleges that the individual defendants conspired to treat plaintiffs like the "rats" they were labeled, for having gone to the FBI and IAD to help convict two crooked cops – thus committing the cardinal sin of having violated the "Code of Silence." The continuing nature of the violation is evidenced from the pleadings. The pleadings have alleged the following continuing acts of retaliation:

In August of 2010, O'Grady "informed supervising personnel in the unit [narcotics] that Plaintiffs were "rats"… [and] ordered that the unit was not to work with Plaintiffs…SAC ¶ 35. Defendant Chief Roti, the Bureau of organized Crime, "fostered, allowed, agreed to and

7

encouraged the retaliation against Plaintiffs at this meeting and in the years that followed. SAC ¶ 42. In May 2011, defendant Deputy Superintendent Kirby, removed Plaintiffs from their detail in Detached Services ¶45, and sent them to the Police Academy to sit at a desk and do nothing. ¶¶ 51-52.

When Plaintiffs were detailed to Inspections Unit, they were immediately labelled "rat motherfuckers" by Defendant Lt. Pascua and told they were not wanted in the unit. ¶ 57. She then spread the word among their co-workers that they were "rats" and no one should talk to them. ¶58. Throughout all this time, Defendant Rivera, head of IAD, "knew of the constant retaliation but allowed it to continue unabated." ¶ 64   After the successful arrest and indictments of Officers Watts and Mohammed, Defendant Roti, ordered that Plaintiffs not be allowed to return to narcotics or any other division of Organized Crime.  This was done because he believed they were "rats." ¶ 67.

In March of 2012, the Plaintiffs were detailed to the Fugitive Apprehension Unit. By the time they arrived, O'Grady had already gone out of his way to personally inform their new supervisors, including Defendants Salemme and Cesario, that Plaintiffs were "rats" and should be treated accordingly."¶74.   Defendant Barnes, Plaintiffs immediate supervisor, picked up the ball and instructed his staff to give Plaintiffs dead end assignments and informed his team that Plaintiffs were "rats" who should not be trusted or backed up by the team." ¶76

In June of 2012, in furtherance of this conspiracy, Plaintiffs were removed from Barnes' team and assigned to defendant Mills. Defendant Salemme made it clear why: "if you go against sworn personnel you know this will happen." ¶ 81.  Defendant Mills continued the retaliatory conduct up through and well after the filing of the instant lawsuit on November 1, 2012.

The above series of acts, all in furtherance of a campaign of retaliation for having

8

reported criminal conduct against fellow officers, is just the type of continuing violation contemplated by *Taylor*. There can be no question that the individual claims against each of the defendants (other than new defendants Barz and Muscolino) were filed within one-year of the last retaliatory act.

The IWA claims against Barz and Muscolino are timely if the retaliation against the Plaintiffs is proved to be ongoing and if these new defendants committed a retaliatory act in further of the conspiracy to punish the Plaintiffs for being "rats" and for bringing the instant lawsuit. That should be a question of fact for the jury to decide.

Even if this Court should determine that the claims for monetary damages against Barz and Muscolino are untimely under the Tort Immunity Act, they remain viable new defendants as a result of the timely false arrest claims. In addition, since the Tort Immunity Act applies only to tort actions seeking damages and not to actions seeking injunctive relief, the IWA claims against them should remain in the SAC for the purpose of obtaining injunctive relief to prevent further retaliatory act and to make the Plaintiffs whole with regard to their lost wages and pension benefits. See e.g. *Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, No. 13 C 1706, 2013 WL 6730885, at *12 (N.D. Ill. Dec. 20, 2013).

**Plaintiff Spalding's New False Arrest Claims Against Barz and Muscolino**

Plaintiff Spalding seeks to add as defendants, Chicago Police Officers Michael Barz and Robert Muscolino and to add a new count of False Arrest under 42 U.S.C § 1983. Plaintiffs contend that the false arrest[3] of Shannon Spalding on March 29, 2013 (¶ 106), carried out by defendants Barz and Muscolino, was just one more act in the continuing campaign of retaliation.

---

[3] The § 1983 false arrest claim is clearly timely, having been filed within two years of the arrest. *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009)

9

This is highlighted by the fact that Officer Barz told Spalding that the charges could "go away" if she dropped her federal lawsuit. ¶ 110.

The Defendants' claim that the False Arrest count is untimely and unduly prejudicial must fail. Plaintiff Spalding was not in a position to know that Barz and Muscolino acted without probable cause until the results of the Complaint Register were turned over to her on February 24, 2015. Until that time, for all Plaintiff knew, Barz and Muscolino could have been supplied false information by other officers which, even if untrue, would have formed a basis for probable cause for her arrest. Therefore, to immediately bring a claim of false arrest would not have been proper or prudent.

Since that time, Plaintiffs have identified and conducted numerous discovery depositions and only now have been able to identify that Barz and Muscolino knew they did not in fact have a basis to arrest Shannon Spalding.

On February 24, 2015, Defendants finally turned over the Complaint Register ("CR") for the incident that Barz and Muscolino were investigating. Thereafter, at the deposition of Thomas Mills, taken on February 25, 2015, Mills expressly stated that he provided no information that he personally or even indirectly knew that Shannon Spalding had in fact committed a crime. That statement was consistent with the information contained in the CR relating to the arrest. Thomas Mills' CR report did not give rise to probable cause to arrest Shannon Spalding. In fact, Mills had no factual basis to even properly generate the CR.

At his deposition, Mills indicated that he never spoke with the alleged source of the rumor that Shannon had committed a crime; he did not ever hear his voice on any recording obtained by Spalding; he never knew of Spalding recording him; and he did not even know if he did or did not ever leave a voicemail on Shannon's phone. (Deposition of Thomas Mills ("Mills

Dep."), pp. 64-65, a copy of which is attached hereto). Mills never gave any indication that he heard anything other than a rumor from one officer that another officer- Coleen Dougan- had said she believed she may have heard from a recording. The investigators- Barz and Muscolino- were never provided any information that would rise to probable cause necessary to substantiate an arrest. Plaintiffs had been attempting to depose Officers Barz, Muscolino, and Dougan by way of notices served well before the Mills deposition.

Leave to amend should be freely granted, particularly where, as here, there is no undue prejudice to the opposing parties. *See Sides v. City of Champaign*, 496 F.3d. 820, 825 (7th Cir. 2007). ("Courts are to use their discretion under Rule 15(a) to liberally grant permission to amend pleadings so long as there is not undue prejudice to the opposing party or undue delay, bad faith or dilatory motive on the part of the movant.") citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002).

Defendant Mills should have come forward with the fact that he had not provided any of the information that formed the basis for Spalding's arrest. The delay in relaying to Plaintiff that Barz and Muscolino had no basis for the arrest was an intentional tactic used by Defendants, and only supports Plaintiffs' motion. In *Spano v. The Boeing Co.*, No. 3:06-CV-00743-DRH-DGW, 2007 WL 4390366, at *3 (S.D. Ill. Dec. 14, 2007), the court held that in cases like this, where an amendment required significant discovery, allowing the amendment after Defendants first disclosed documents, even if after the deadline for amendments, is appropriate. The Court reasoned as follows:

> Upon review of the proposed amended complaint, the Court finds that each of the new claims are of the kind which are made manifest only after significant discovery. The Defendants point to several vague statements made by the Plaintiffs' counsel that suggest that Plaintiffs were aware of the claims prior to the

11

start of litigation  However, these assertions do not indicate that the Plaintiffs had the kind of specific knowledge required to transform a mere a suspicion into a cognizable claim. Further, Plaintiffs have shown that Defendants produced a large number of documents after the deadline for amendment. No amount of diligence on the part of Plaintiffs could have forced production of those documents prior to the deadline; the production was at the will of the Defendants. Therefore, it is the Defendants' own conduct that belies their assertion that the Plaintiffs have not been diligent in making timely claims.

*Id.*

Waiting to have proof as to who committed a civil rights violation should not be held against the victim.

**CONCLUSION**

For the above stated reasons, the Plaintiffs respectfully request that this Court grant their motion for leave to file their Second amended Complaint.

                                                RESPECTFULLY SUBMITTED,

                                                /s/Jeffrey L. Taren
                                                Attorney for Plaintiff

Christopher R. Smith
Christopher Smith Trial Group, LLC
1 N. LaSalle Street, Suite 3040
Chicago, IL 60602
312.432.0400
Email: chris@crstrialgroup.com

Jeffrey L. Taren
Miriam N. Geraghty
Kinoy, Taren & Geraghty P.C.
224 S. Michigan Ave.
Suite 490
Chicago, IL 60604
Tel: 312- 663-5210
Fax: 312-663-6663
Email:  jtaren@ktglawyer.com
       mgeraghty@ktglawyer.com