IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Chicago Police Officers SHANNON SPALDING and DANIEL ECHEVERRIA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12-cv-8777 |
| CITY OF CHICAGO, Chicago Police Chief JUAN RIVERA, Chicago Police Chief JAMES O'GRADY, Chicago Police Chief NICHOLAS ROTI, Chicago Police Lt. Sergeant MAURICE BARNES, Chicago Police Lt. ROBERT CESARIO, Chicago Police Commander JOSEPH SALEMME, Chicago Police Sergeant THOMAS MILLS, | ) ) ) ) ) ) ) ) ) | Judge Gary Feinerman Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' FIRST MOTION *IN LIMINE* TO BAR TESTIMONY, EVIDENCE OR ARGUMENT RELATING TO A POLICE CODE OF SILENCE**

The constitutional violations in the instant case are inextricably intertwined with the City's now admitted practice of maintaining a police code of silence. See, Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment at pp. 21-25. Since the code of silence is at the heart of the case at bar, the practices identified by Plaintiffs' expert Lou Reiter support Plaintiffs' *Monell* claims to a greater extent than any of the other cases where code of silence testimony has been allowed. The evidence elicited in this case far exceeds that accepted in *Obrycka v. City of Chicago*, Not Reported in F. Supp. 2nd, 2012 WL 601810 (Feb. 23, 2012); *Johnson,* 2009 WL 1657547, *Arias v. Allegretti,* No. 05 C 05940, 2008 WL 191185 (N.D. Ill. Jan.22, 2008), *Garcia v. City of Chi.,* No. 01 C 08945, 2003 WL 1715621 (N.D.Ill. Mar.20, 2003), *Kindle,* 2002 WL 230779, and *Robinson v. City of Harvey,* No. 99 C 3696, 2001 WL 138901 (N.D.Ill. Feb.16, 2001).

1

This is exactly the type of case that the Seventh Circuit in *Rossi v. City of Chicago*, 790 F.3d 729, 737-38 (7th Cir. 2015) opined would support *Monell* liability based upon a code of silence. District courts have excluded evidence of a police code of silence only in cases where there is no *Monell* claim directly related to a policy or practice that encourages officers to turn a blind eye to misconduct on the part of their fellow officers. None of the cases cited by the Defendants where reference to a code of silence has been barred, involve a case where the *Monell* claim directly concerns issues related to officers who are retaliated against because they have blown the whistle on other officers. Rather, they involve cases such as *Redmond v. City of Chicago*, 14-cv-5482, cited by Defendants in their motion, where Judge Chang prohibited testimony about a generalized code of silence in an individual excessive force and failure to provide medical care case.

While the Defendants do not even want the Plaintiffs to mention the phrase "Code of Silence" or "Blue Veil," the highest ranking official in the City, Mayor Rahm Emanuel, his Interim and now Permanent Superintendents of Police, Escalante and Johnson, and the Mayor's own Police Accountability Task Force all refer to the "Code of Silence" as an alive, well and longstanding blight on the City.

The Mayor's "Police Accountability Task Force Report", April 2016 at pp 69-70 concluded as follows:

> What are the barriers to identifying police misconduct? The Code of Silence and beyond.
>
> The police cannot be held accountable for misconduct that is hidden. Yet there are many ways in which the current system serves to make it more difficult to identify potential misconduct. For years, people have talked about a "blue code of silence," an unwritten rule that says that a police officer will not report on another police officer's misdeeds.
>
> In December 2015, Mayor Emanuel was asked if there is a "code of silence" that exists among Chicago police officers. "The short answer is yes," he said. Referring to the shooting death of Laquan McDonald, Mayor Emanuel conceded that "this isn't the first

shooting where maybe there hasn't been honest reporting by officers who were there." As he then explained in a December 9, 2015 speech to the City Council:

*This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues. . . . We cannot ask citizens in crime-ravaged neighborhoods to break the code of silence if we continue to allow a code of silence to exist within our own police department.*

Current and former CPD officials have also increasingly acknowledged a "code of silence." Former Superintendent Richard Brzeczek (1980-83) has said that a code of silence "has always existed in the police department."216 Eugene Williams, the current Chief of the Bureau of Support Services, and former Chief of the Bureau of Patrol, stated that:

*[S]ix months of academy training cannot stand up to a career of "on the streets influence" by veteran officers who are all too anxious to show the rookies how things are really done on the streets. The way it is done on the streets is to protect and cover for your partner at all cost, even at the expense of sacrificing every ounce of one's integrity. This culture has been all too evident when we investigate thousands of allegations where the partner of the accused never sees, or hear[s] of any inappropriate conduct although they work in very close proximity of each other during their entire tour of duty. Yet, within this culture it is considered righteous to cut corners and embellish on the facts in a case report or arrest report to win a case in court.*

**The Task Force has found that the code of silence is not just an unwritten rule, or an unfortunate element of police culture past and present. The code of silence is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City.** These impediments to identifying potential misconduct must be eliminated if CPD and the City are to end this persistent challenge. (emphasis added)

https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf

Plaintiffs will be introducing testimony regarding specific widespread policies and practices that support their claim for *Monell* liability. These include:

a. The maintenance and/or tolerance of a police code of silence whereby police officers do not report the misconduct of other police officers even if that misconduct is criminal, out of fear of retaliation.

b. The conscious decision to ignore the code of silence and to refuse to develop any training materials that address issues relating to a code of silence;

3

    c.    The conscious decision to refuse to acknowledge the potential of the code of silence, and take affirmative steps to minimize its influence.

    d.    The failure to discipline officers who engage in retaliation against others who break the code of silence and report the misconduct of their fellow officers;

    e.    The failure to discipline officers who engage in misconduct.

Plaintiffs' inability to refer to the very practices that caused the constitutional violations in this case would completely gut Plaintiffs' theory of the case and constitute reversible error. Plaintiffs intend to present evidence from Chicago Police officers that fully support the conclusions of the Mayor's Police Accountability Task Force and which will allow a jury to conclude that the code of silence has been an integral policy of the City for decades.

For example, at her deposition, Officer Jan Hanna testified that she was specifically instructed at the police academy, that officers were to maintain the code of silence. Hanna Deposition p. 45:18-46:4[1]

> A.    When I was in the Police Academy, I was instructed by several instructors. We were told over and over again we do not break the code of silence. Blue is blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence.

Plaintiffs' police procedures expert, Lou Reiter, will be presenting compelling evidence that will allow a jury to find that the constitutional violations that injured Plaintiffs Spalding and

---

[1] The deposition transcripts referenced throughout Plaintiffs Responses to Defendants' Motions *in limine* can be found in the exhibits filed as part of Plaintiffs' Rule 56 (b)(3)(C) Statement of Additional Facts that Require the Denial of Summary Judgement (Dk 173). With the exception of the deposition transcript of Michael Pigott, which is attached to Plaintiffs' Response to Defendants Fifth Motion *in limine*.

Echeverria, resulted directly from the City's widespread practices of maintaining and enforcing a code of silence where cops don't rat on their fellow cops and those that do, pay a high price. See, Plaintiffs' Response to Defendants' Twelfth Motion *in limine* to bar the testimony of Lou Reiter.

If the Defendants' Motion for Summary Judgment with regard to Plaintiffs' *Monell* claims is denied, as it should be, then this Motion *in Limine* must also be denied.

Respectfully submitted,

**/s/ Jeffrey L. Taren**

Jeffrey L. Taren
Miriam N. Geraghty
Kinoy Taren & Geraghty, P.C.
224 S. Michigan, Suite 490
Chicago, Illinois 60604
Phone: (312) 663-5210
Fax: (312) 663-6663
jtaren@ktglawyer.com

Christopher R. Smith
Christopher Smith Trial Group
1 North LaSalle St., Ste. 2000
Chicago, Illinois 60602
Phone: (312) 432-0400
Fax: (312) 850-2704
chris@crstrialgroup.com