IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chicago Police Officers SHANNON SPALDING and DANIEL ECHEVERRIA, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF CHICAGO, Chicago Police Chief JUAN RIVERA, Chicago Police Chief JAMES O'GRADY, Chicago Police Chief NICHOLAS ROTI, Chicago Police Lt. Sergeant MAURICE BARNES, Chicago Police Lt. ROBERT CESARIO, Chicago Police Commander JOSEPH SALEMME, Chicago Police Sergeant THOMAS MILLS, )<br>)<br>Defendants. ) | Case No. 12-cv-8777<br><br>Judge Gary Feinerman<br><br>Magistrate Judge Sheila M. Finnegan |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' TWELFTH MOTION
*IN LIMINE* TO BAR LOU REITER AS AN EXPERT WITNESS**

While conceding that the Plaintiffs' expert, Lou Reiter, is qualified as an expert in policing, the Defendants have moved to bar Mr. Reiter's testimony claiming that it is neither reliable nor relevant. Plaintiffs have addressed much of this argument both in their Response to Defendants' Motion for Summary Judgment and in their Response to Defendants' Motion to Bar Testimony and Evidence Regarding the Code of Silence.

1. **Reiter's Expert Testimony**

Plaintiffs' theory of the case, for *Monell* liability purposes, can only be proved through expert testimony. *Rossi v. City of Chicago*, 790 F.3d 729, 737-38 (7th Cir. 2015). It is a simple theory and one accepted by other courts within our District. *Obrycka v. City of Chicago*, Not Reported in F. Supp. 2nd, 2012 WL 601810 (Feb. 23, 2012).

1

Lou Reiter's expert testimony, supported by scholarly works, practical experience and data specific to Chicago, is straight forward: Police commit misconduct when there are no adverse consequences that result from that misconduct. The City of Chicago has encouraged police misconduct by tolerating and even encouraging a "police code of silence" where officers are reluctant to come forward when they observe other officers committing criminal or unconstitutional acts.  Longstanding citywide practices of failing to investigate police misconduct, failing to discipline officers who engage in misconduct or who refuse to come forward with evidence of misconduct, and failing to properly train officers regarding their obligations to report misconduct, has maintained the police code of silence. And for a police code of silence to survive to the extent it has in Chicago, officers who violate the code (like Shannon Spalding and Daniel Echeverria) must be punished and the superior officers who punish them, must be given free rein to do so also without fear of any disciplinary repercussions. That is what happened in the instant case.

2. The Standards for Expert Testimony

A challenge to the admissibility of expert testimony under Federal Rule of Evidence 702 must be evaluated within the "permissive" backdrop implicit in the Federal Rules of Evidence whereby relevant evidence, liberally defined, is generally admissible. *Daubert,* 509 U.S. at 587-88 (citing F.R.E. 401 and 402). In cases of non-scientific testimony, the emphasis under F.R.E. 702 is not placed on the methodology of the expert testimony but on the professional and personal experience of the witness, *Kumho Tire,* 526 U.S. at 152, and the methodology of non-scientific testimony need not be subjected to rigorous testing or peer review to establish its admissibility. *Crowley v. Chait,* 322 F.Supp.2d 530, 539 (D.C.N.J.2004). In fact, *Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge

that the expert's assessment of the situation is correct. *U.S. v. Mitchell,* 365 F.3d 215, 244 (3rdCir.2004) citing *Ruiz-Troche v. Pepsi Bottling Co.,* 161 F.3d 77, 85 (lstCir.1998). As long as an expert's scientific testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process - competing expert testimony and active cross-examination - rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. Id. In short, *Daubert* neither requires nor empowers trial courts to determine which of several competing theories has the best provenance. Id. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion. Id.

There is no basis under *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993) to exclude Lou Reiter's testimony with regard to the existence of a code of silence within the Chicago Police Department, where the constitutional violations committed against the Plaintiffs result directly from their failure to adhere to this widespread custom and practice.

   3.  The Reliability and Relevance of Lou Reiter's Testimony

*Rossi v. City of Chicago*, 790 F.3d 729, 737-38 (7th Cir. 2015) and *Obrycka v. City of Chicago*, Not Reported in F. Supp. 2nd, 2012 WL 601810 (Feb. 23, 2012) illustrate both the relevance of Mr. Reiter's testimony concerning the widespread practices that exist within the Chicago Police Department and the reliability of Mr. Reiter's scholarship and opinions. In *Rossi* the court faulted the plaintiff not for his theory of *Monell* liability (that a policy of failing to discipline and train officers regarding ethical conduct lead to the individual misconduct) but because the plaintiff had not retained an expert or properly disclosed his expert reports. (including the report of Lou Reiter submitted in *Obryka*).

3

In *Obryka,* the plaintiff proved, through much of the same testimony being presented in the instant case, that a code of silence exists within the CPD whereby officers conceal each other's misconduct in contravention of their sworn duties. *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 601810, at *6 (N.D. Ill. Feb. 23, 2012). Evidence was presented in *Obryka* that this *de facto* policy and the code of silence are evidenced and caused by the CPD's failure, among other things, to: (1) sufficiently investigate allegations of police misconduct; (2) accept citizen complaints against police officers; (3) promptly interview suspected officers or take witness statements and preserve evidence; (4) properly and sufficiently discipline officers; and (5) maintain accurate and complete records of complaints and investigations of misconduct. *Obrycka* maintained that this *de facto* policy and the code of silence encourages Chicago police officers to engage in misconduct with impunity and without the fear of official consequences. *Obrycka* at *6. As a result, officers feel free to break the law and therefore, the injury to Ms. Obryka was a direct consequence of the policy.

In the within case, Mr. Reiter has based his opinions, as set forth in his 26(a)(1) Report attached to Plaintiffs' Rule 56(b)(3)(C) Statement of Additional Facts that Require the Denial of Summary Judgment (Dk. 173, Ex. 20), on his extensive scholarship with regard to police procedures in general and the code of silence in particular. As the former Deputy Chief of Police of the Los Angeles Police Department and later as a police consultant to police departments around the country, Mr. Reiter is an expert on generally accepted practices with regard to training and disciplining of police officers. His testimony examines the studies and literature in the field and applies his expertise to the City's policy of allowing a code of silence to exist and its utter lack of policies with regard to training its police officers regarding the need to report

4

misconduct on the part of other police officers as well as its failure to discipline officers who engage in misconduct or who observe misconduct and fail to report it.

Mr. Reiter addresses the system-wide policy and practice of the CPD in ignoring what he has observed is an endemic practice within all police agencies in the United States. The City in this case presented the testimony of its 30(b)(6) witnesses, Captain Michael Pigott and Commander Robert Klimas, each of whom declared that there is no such thing as a code of silence and who admitted that the Chicago Police Department engages in no training whatsoever with regard to the existence or nonexistence of a code of silence. Reiter Report ¶ 26. Captain Pigott testified on behalf of the City that he had never read anything regarding the code of silence, never reviewed any materials or literature on the code and had no recall of any officer who received retaliation for reporting misconduct of another officer. He further testified that he could recall only one case in his career where an officer was disciplined for not reporting misconduct "immediately," concluding that he believed that codes of silence are more TV or movie related. Reiter Report ¶ 26.

Mr. Reiter will testify, based upon his review of the deposition testimony in the within case, his scholarship in the area of police ethics and training and his extensive study of the Chicago Police Department over the years, as follows:

> The Code of Silence exists to varying degrees in all police agencies in the United States. The failure of the Chicago Police Department to acknowledge its potential and take affirmative steps to eliminate or minimize the influence of the Code of Silence, in my opinion, is a conscious choice various Chicago Police managers and executive officers have taken and, in my opinion, represents a position of deliberate indifference by the Chicago Police Department to this disruptive issue within the agency.

(Reiter Report ¶ 14)

Reiter will also testify about the methodology and training that he conducts for police departments around the country to identify whether the code of silence may be present in an agency and to combat the adverse effect on the performance of the agency that such a code presents. Reiter Report ¶ 19. After examining the testimony of the City's 30(b)(6) witnesses, Mr. Reiter concludes that "The Code of Silence…exists within the Chicago Police Department. The Department has failed to take any affirmative positions on this topic and has allowed it to continue to exist within the agency." Reiter Report ¶ 21. Reiter then presents numerous specific examples supporting his opinions as well as recounting the statistics presented by the City's 2nd 30(b)(6) witness, Commander Robert Klimas, concerning the number of officers disciplined and not disciplined for failing to report another officer for misconduct[1]. Reiter Report ¶ 31.

Mr. Reiter will connect the City's policies and lack of policies with the retaliatory actions that the Plaintiffs experienced. "The forms of retaliation alleged by Officers [Spalding] and Echeverria…are those commonly found in law enforcement incidents where an officer breaks the Code of Silence or is presumed to have done so and who is suspected of giving adverse information concerning employee misconduct about another member of the police agency." Reiter Report ¶ 10.

Plaintiffs' theory of *Monell* liability includes both the argument that the City's policies have created a code of silence which directly and inevitably resulted in the retaliatory actions taken against the Plaintiffs and that the City's failure to train its officers or to even acknowledge

---

[1] Plaintiffs expect that Reiter will also support his opinions with the same type of statistical evidence found admissible in *Obryka* and published by the City's own Task Force, concerning the incidents of misconduct and the almost complete lack of investigatory and disciplinary actions taken against Chicago Police officers accused of that misconduct. See The Mayor's "Police Accountability Task Force Report", April 2016 at pp 69-70 https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf

6

that a code of silence exists, constitutes deliberate indifference to the constitutional violations that result.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) the court stated:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

The court in *Canton* gives two examples of a police department's failure to train which could lead to *Monell* liability and which are analogous to the instant case:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see *Tennessee v. Garner,* 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.
>
> It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989)[2]

The highest policymaker in the City of Chicago, Mayor Rahm Emanuel, his appointees as Superintendent of Police and now the City's own Police Accountability Task Force, all have acknowledged that a code of silence exists and has for a long time existed throughout the Chicago Police Department. Mr. Reiter will testify that allowing such a policy to exist without

---

[2] In *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) the court held that the need to train prosecutors with regard to the *Brady* obligations was not so obvious that the district attorney's office was liable on a failure-to-train theory. The court continued to recognize that deliberate indifference in a failure-to-train case also can rest on a single incident theory of liability.

acknowledging its existence and without training police officers is so likely to result in the constitutional violations committed against Plaintiffs as to constitute deliberate indifference to constitutional rights. He will also testify to the numerous instances of constitutional violations that have flowed from this policy such that it must have been plainly obvious to the city policymakers that some affirmative action should have been taken to minimize the effects of the code.

The Defendants' own retained expert witness, Jon Schorle, testified that he was surprised that the City's 30(b)(6) witness, Captain Michael Pigott, who was held out as the City's most knowledgeable person concerning the code of silence, indicated that he had never reviewed any materials regarding the code of silence. Schorle testified, "What I agreed with Chief Reiter's opinion was that the Chicago Police Department has apparently made a conscious choice to deny the potential existence and impact of a code of silence." (Schorle Dep., p. 25-26*)*

*Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993) teaches that vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking admissible evidence. The jury in this case should be allowed to evaluate the somewhat opposing opinions of Mr. Reiter and Mr. Schorle, to consider the policies testified to by Captain Pigott and Commander Klimas, and determine whether the City's widespread policies or practices resulted in the constitutional violations as alleged by the Plaintiffs.

The Defendants' Twelfth Motion *in limine* should be denied.

Respectfully submitted,

**/s/ Jeffrey L. Taren**

Jeffery L. Taren
Miriam N. Geraghty
Kinoy Taren & Geraghty, P.C.
224 S. Michigan, Suite 490
Chicago, Illinois 60604
Phone: (312) 663-5210
Fax: (312) 663-6663
jtaren@ktglawyer.com

Christopher R. Smith
Christopher Smith Trial Group
1 North LaSalle St., Ste. 2000
Chicago, Illinois 60602
Phone: (312) 432-0400
Fax: (312) 850-2704
chris@crstrialgroup.com