IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Chicago Police Officers SHANNON SPALDING and DANIEL ECHEVERRIA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12-cv-8777 |
| CITY OF CHICAGO, Chicago Police Chief JUAN RIVERA, Chicago Police Chief JAMES O'GRADY, Chicago Police Chief NICHOLAS ROTI, Chicago Police Lt. Sergeant MAURICE BARNES, Chicago Police Lt. ROBERT CESARIO, Chicago Police Commander JOSEPH SALEMME, Chicago Police Sergeant THOMAS MILLS, | ) ) ) ) ) ) ) ) ) | Judge Gary Feinerman |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE MEMORANUDM TO DEFENDANT CITY'S MOTION TO BIFURCATE PLAINTIFFS' *MONELL* CLAIM AGAINST THE CITY OF CHICAGO**

On May 16, 2016, two weeks before the scheduled trial date in this matter, Defendant City filed a Rule 42(b) Motion seeking to bifurcate Plaintiffs' *Monell* claim against it, stay the trial on this claim and enter the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago." Both fact and expert discovery have long been completed, including discovery on Plaintiffs' claims against the individual Defendants and their *Monell* claims against the City. In addition, the parties have engaged in extensive briefing on the Defendants' Motion for Summary Judgment and the Court has ruled that there is sufficient evidence to allow the *Monell* claim to be tried. The Court has ruled on eighteen Motions *in Limine* and the case is set to begin a jury trial on May 31. At this late date, the Defendant City offers to enter into a Limited Consent to Entry of Judgment against Defendant City of Chicago. (DKT. 243, Exhibit A.) Specifically, the City "*without admitting Plaintiff's Monell allegations*

1

*in the SAC and the Final Pretrial Order,* consents to the entry of judgment against the City for compensable damages and to the extent allowed by the Court, reasonable attorney's fees pursuant to 42 U.S.C.§1988, if and only if the finder of fact in this case finds that any of the Individual Defendants… is liable to Plaintiffs for a violation of Plaintiffs' constitutional rights."

Plaintiffs oppose this motion because, rather than promote efficiency and economy, it will result in duplicative litigation and cause additional unnecessary expense to both parties. More importantly, it also undermines the Plaintiffs' ability to seek redress for the constitutional deprivation they have suffered as a result of the Chicago Police Department's adherence to a code of silence.

## I. Bifurcation Will Not Promote Efficiency or Economy

Unlike virtually every case cited in support of bifurcation in Defendants' Memorandum,[1] this case is set for trial in a little over a week.   In fact, the trial date was set nearly a year ago, July 23, 2015.  (Dkt. 136)  The pretrial conference has been held and the Motions *in Limine* have been ruled upon.  Any economies that might have been achieved had bifurcation and a stay of discovery been sought earlier by the Defendants are thus lost.   Both parties have identified witnesses, including expert witnesses, who have long been scheduled to testify on the scheduled trial date.   Plaintiffs have been unable to locate an instance where a Court in this District has granted bifurcation of the *Monell* claim at this stage in the litigation.  There is good reason for this because if the Court were to grant the motion, the goals of Rule 42 will be thwarted and the result will be duplicative litigation and additional expense. Plaintiffs will be forced to put on

---

[1] Ki*itchen v. Burge, No. 10-4093)*(attached to Defendants' Memorandum,); *Taylor v. Kachiroubas,* 2013 WL 6050492 (N.D. Il. 2013)*Ojeda v. Beltran*, 2008 WL 2782815 (N.D. Il. 2008) *Moore v. Smith, 07-5908* (N.D. Il. 2008) *Ramirez v. City,*  (05-317) (N.D. Il. (Attached to memo)*Nix v. City, Cruz v. City of Chicago,* 2008 WL 5244616 (N.D. Il. 2008) all involved motions by the City to stay *Monell* discovery as well as bifurcate *Monell* claims which were brought early on in the litigation.

evidence as to the code of silence twice: Once in the trial of the individual Defendants and again, in in the trial of the *Monell* claim. On the other hand should the City's motion be denied, it is unlikely that the *Monell* testimony in this case will take more than a day. The money has been spent as has the time and effort in discovery. In short, bifurcation, at this stage of the litigation, would not be expeditious.

Defendant City's primary motivation in filing this motion is revealed in the recitation of Plaintiffs' evidence that Defendant has unsuccessfully sought to exclude as prejudicial, including the testimony of Mayor Rahm Emanuel, the Mayor's Police Accountability Task Force Report, the testimony of Lou Reiter regarding the code of silence, alleged threats or retaliation against Plaintiffs by Ronald Watts, and the testimony of Michael Spaargaren (See Defendant's Memorandum at page 6). The relevance and admissibility of this evidence has already been ruled on by this Court. Defendants are not simply attempting to "limit costs," but to prejudice Plaintiffs in attempting to prove their case.

The City has chosen, as is its right, to vigorously defend against these claims over the course of this litigation. It is inherently unfair, to allow the City to now remove the *Monell* claim as a strategy to avoid exposure or suppress allegedly prejudicial evidence.

## II. Plaintiffs will be Prejudiced if the City is Allowed to Dodge Responsibility for Creating a Code of Silence that Caused Plaintiffs' Constitutional Harm

Plaintiffs contend and the Court has acknowledged in its recent rulings on the parties' Motions *in Limine* that the City's code of silence is at the heart of this case. In fact, it is the code of silence that is the chief cause of Plaintiffs' constitutional deprivations. Plaintiffs broke the code when they went to the FBI in 2007 to complain about their corrupt fellow police officers. For that, they have suffered a barrage of retaliation from supervisors in the Chicago Police Department which has ended the career of Plaintiff Spalding and severely impacted the career of

Daniel Echeverria. While Plaintiffs have ample evidence that the individual Defendants were motivated by retaliatory animus, it is Plaintiffs' contention that the code of silence fostered that retaliatory animus and made it more likely than not that the individual Defendants acted in conformance with the City's unwritten code. In an attempt to shield itself from public scrutiny, the City offers to pay the bill for the individual Defendants should they be held liable and thereby dodge responsibility for their unconstitutional policies should there be a finding in the individual Defendants' favor.

The City is attempting to sidestep the long established principle that a plaintiff may sue a municipality for independent, non-derivative liability based on the municipality's unconstitutional policies and practices *See, Owen v. City of Independence,,* 445 U.S. 622 (1980) Defendant City argues that if the individual Defendants are found not liable to Plaintiffs for any constitutional violation, there is no basis on which to impose liability on the City pursuant to *Monell*, citing *Treece v. Hochstetler* 213 F.3d 360, 364 (7th Cir. 2000)(See Defendant City's Memorandum at page 10) Plaintiffs disagree. The Seventh Circuit has recognized that "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). The Seventh Circuit reiterated in *Swanigan v. City of Chicago,* 775 F. 3d 953, 962 (cited in Defendant's Memorandum at p. 4) that in some civil rights cases, a verdict in favor of individual defendants would not foreclose a *Monell* claim. For example, in some cases, plaintiffs might want to pursue equitable relief against the municipality:

> In some civil-rights case... a verdict in favor of individual defendants would not
> necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell*

claim…  In still other cases, the plaintiff may want an injunction against future constitutional violations or some other equitable remedy, and he may be willing to invest  the time and effort needed to prove his entitlement to that relief.  In such cases the plaintiff is entitled to try to prove his *Monell* claim.  Id at 962

The bottom line is that it is not inconsistent for the City to be held liable for its unconstitutional policies, i.e, fostering and maintaining a code of silence within the Chicago Police Department even if the jury is unable to determine which, if any of the individual Defendants or other members of the Department are responsible for the retaliatory conduct which has occurred.  The jury should be allowed to find that the City itself is the culpable Defendant regardless of what it finds with respect to the individual officers.   Plaintiffs are harmed by the unconstitutional policy itself, whether or not the individual Defendants are liable. *See also, Obrycka v. City of Chicago,* 2012 WL 601810 *11 ("Obrycka's theory of municipal liability based on the alleged widespread practice of concealing or suppressing investigations into police officer misconduct is not dependent on (the individual defendant's) violating her constitutional rights…") (*But see*,  *Fuery v. City of Chicago,* 2015 WL 715281, *2) *See also, Obrycka v. City of Chicago* 2012 WL 601810 *11

Plaintiffs herein allege that the pervasive code of silence not only fostered and allowed the individual Defendants to retaliate against Plaintiffs but that it independently created a toxic and threatening atmosphere for any officer who was confronted with the wrong doings of fellow officers.   Plaintiffs contend that whether or not they are able to sustain claims against the individual Defendants, the City can be found liable under *Monell* for the creation of an untenable and threatening employment environment that thwarts open disclosure of wrong doing.  The fact that Plaintiffs are employees of the CPD and therefore at all times subject to the unconstitutional policy of a code of silence, distinguishes this case from police misconduct claims brought by ordinary citizens.   Plaintiffs have a special interest in working in an environment, which is free

5

from the threat of unconstitutional retaliatory conduct when employees break the code. It would not be inconsistent for a jury to find insufficient evidence of retaliatory acts by the individual Defendants but to find that the City created an actionable hostile environment for officers confronted with blatant corruption and wrongdoings by fellow officers. It is appropriate and in the public interest for these Plaintiffs to seek to remedy this unconstitutional conduct by their employer, the City of Chicago.

The City, through its proposed unilateral certification, seeks to hide its unconstitutional practices and remove itself as principal wrongdoer from the courtroom, robbing the Plaintiffs of the moral force of their evidence. The principle that the Plaintiffs are the masters of their complaint is firmly established. *See .e.g., Homes Group, Inc. v. Vornado Air Circulation systems, Inc.* 535 U.S. 826, 831 (2002); *Garbie v. Dailmler Chrysler Corp.* 211 F. 3d 407, 410 (7th Cir. 2000.) This Court has ruled that Plaintiffs have stated a legally sufficient *Monell* claim. They should be allowed to reject the Defendant's Consent to an element of their case and to tell their own story. Plaintiffs are not claiming only that individual supervisors had it out for them because they saw them as rats. Plaintiffs are claiming that these individual Defendants were acting pursuant to an unconstitutional code of silence within the Chicago Police Department when they retaliated against them and that the code of silence created an atmosphere of fear and intimidation.

## III. Failure to Bifurcate will not be Prejudicial to Defendants

Defendants argue that bifurcation of the *Monell* claim "protects the individual Defendants and the City from possible prejudice caused by the introduction at trial of extensive evidence relating to individuals with no involvement in this case." (Defendants Memorandum at page 5) However, that argument ignores the measures that a court may take to limit the possible

prejudice.   As the District Court stated in *Medina v. City of Chicago*, 100 F. Supp. 2d 893 (N.D.

Il.  2000) where the city sought bifurcation on similar grounds as it seeks here:

> Though the Court is cognizant of the possibility of prejudice to the individual officers if the claims are tried together, our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others—even in criminal cases, where a person's liberty is at stake.  Id at 897.  *See also, King v. Evans,* 2015 WL 4397761 *3 (N.D. Il. 2015) ("Any potential for unfair prejudice to individual officers from litigating the *Monell* claim with the individual claims… can be addressed adequately at trial as necessary through motions in limine and limiting instructions for the jury." *Elrod v. City*, 2007 WL 3241352 *7 (N.D. Il. 2007),( the prejudice argument advanced by the City "could, in theory, apply to virtually every case that involved both individual liability and *Monell* policy claims, because the nature of a *Monell* claim requires evidence that goes beyond the actions of the individual defendant… Generally, the issue of avoiding prejudice at trial is better addressed by application of the Rules of Evidence, rulings in limine and limiting instructions.  This argument is not, in itself, a persuasive reason for bifurcation."

## IV.    Conclusion

It is too late in the day for the City to reap the benefits of the economies it allegedly

seeks.  Discovery is complete, the pretrial order has been filed, the extensive motions *in limine*

resolved and the matter is set for trial on May 31.  Bifurcation of the *Monell* claim will only

increase the expense to the parties and will not expedite a resolution of this case.  Furthermore,

there is a societal interest in allowing the Plaintiffs to seek redress of the deprivation of their

Constitutional rights by the City.  Eliminating the code of silence in the Chicago Police

Department is a matter of public interest not just for the Plaintiffs, but for the citizens of the City

of Chicago.

Respectfully submitted,

**/s/ Miriam N. Geraghty**

Miriam N. Geraghty
Jeffrey L. Taren
Kinoy Taren & Geraghty, P.C.
224 S. Michigan, Suite 490
Chicago, Illinois 60604
Phone: (312) 663-5210
Fax: (312) 663-6663
mgeraghty@ktglawyer.com
jtaren@ktglawyer.com

Christopher R. Smith
Christopher Smith Trial Group
1 North LaSalle St., Ste. 2000
Chicago, Illinois 60602
Phone: (312) 432-0400
Fax: (312) 850-2704
chris@crstrialgroup.com